IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CRYSTAL JULIET ALMANZA,

     Plaintiff,

    vs.                             1:20-cv-01258-LF

KILOLO KIJAKAZI,[1] Acting Commissioner
of the Social Security Administration,

     Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Crystal Juliet Almanza's Motion to Reverse and Remand with Supporting Memorandum, filed on August 9, 2021. Doc. 23. The Commissioner filed her response on November 8, 2021. Doc. 26. Ms. Almanza did not file a reply; instead, she filed a Notice of Briefing Complete on December 3, 2021. Doc. 27. The parties consented to my entering final judgment in this case. Docs. 5, 13, 14. Having read the briefing and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") applied the correct legal standards, and that substantial evidence supports his decision. I therefore DENY Ms. Almanza's motion and AFFIRM the Commissioner's decision.

I.    **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's

decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116,

1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court

with a sufficient basis to determine that appropriate legal principles have been followed is

grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal

quotation marks and brackets omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on

substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere

scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the

issues de novo, its examination of the record as a whole must include "anything that may

undercut or detract from the ALJ's findings in order to determine if the substantiality test has

been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of

drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)

(quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A);

20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-

step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140

(1987).  At the first four steps of the evaluation process, the claimant must show:  (1) the

claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected

to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of

presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past

relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61.  If the

claimant cannot show that his or her impairment meets or equals a Listing but proves that he or

she is unable to perform his or her "past relevant work," the burden of proof shifts to the

Commissioner, at step five, to show that the claimant is able to perform other work in the

national economy, considering the claimant's residual functional capacity ("RFC"), age,

education, and work experience.  *Id.*

### III.    Background and Procedural History

Ms. Almanza is 39 years old, has an associate degree in teaching, and lives with her

husband and two children in Grants, New Mexico.  AR 40–41, 78.[4]  Ms. Almanza has worked as

a teacher's assistant, a teacher, and a school nurse.  AR 40.  Ms. Almanza filed an application for

Disability Insurance Benefits ("DIB") on December 21, 2017,[5] alleging disability since

December 11, 2017, because of a Lupus-like inhibiter, Reynaud's disease, extreme fatigue,

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 18-1 is the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[5] The application is dated January 18, 2018, but the body of the application notes a protective filing date of December 21, 2017.  *See* Program Operations Manual System ("POMS") GN 00204.010 ("If certain criteria are met, protective filing is established on the date SSA receives a written statement of intent to file for Title II, Title VIII, or Title XVI.").

inflammation in her joints and body, Lupus SLE,[6] and irregular heartbeat.  AR 158–59, 191.  The

Social Security Administration ("SSA") denied her claim initially and on reconsideration.  AR

60–91.  Ms. Almanza requested a hearing before an ALJ.  AR 103.  On January 13, 2020, ALJ

Eric Weiss held a hearing.  AR 36–59.  The ALJ issued his unfavorable decision on March 17,

2020.  AR 12–29.

The ALJ found that Ms. Almanza met the insured status requirements of the Social

Security Act through June 30, 2019.  AR 17.  At step one, the ALJ found that Ms. Almanza had

not engaged in substantial, gainful activity since December 11, 2017, her alleged onset date.  AR

18.  At step two, the ALJ found that Ms. Almanza's systemic lupus erythematosus, Reynaud's

disease, benign atrial ectopy, sinus bradycardia, vertigo, major depressive disorder, and somatic

symptom disorder were severe impairments.  *Id*.  The ALJ further found that Ms. Almanza's

hepatic steatosis, vision problems, and obesity were non-severe impairments.  *Id*.  At step three,

the ALJ found that none of Ms. Almanza's impairments, alone or in combination, met or

medically equaled a Listing.  AR 18–21.  In assessing Ms. Almanza's mental impairments at step

three, the ALJ found that Ms. Almanza had moderate limitations in understanding, remembering,

or applying information; interacting with others; concentrating, persisting, or maintaining pace;

and adapting or managing herself.  AR 19–20.  Because the ALJ found that none of the

impairments met a Listing, the ALJ assessed Ms. Almanza's RFC.  AR 21–27.  The ALJ found

Ms. Almanza had the RFC to

---

[6] "Systemic lupus erythematosus ("SLE") is the most common type of lupus.  SLE is an autoimmune disease in which the immune system attacks its own tissues, causing widespread inflammation and tissue damage in the affected organs.  It can affect the joints, skin, brain, lungs, kidneys, and blood vessels.  There is no cure for lupus, but medical interventions and lifestyle changes can help control it."  *Systemic Lupus Erythematosus*, Centers for Disease Control and Prevention, https://www.cdc.gov/lupus/facts/detailed.html#sle (last visited June 8, 2022).

perform light work as defined in 20 CFR 404.1567(b) except the claimant is able [to] lift twenty pounds occasionally and lift and carry ten pounds frequently, and push and pull the same.  The claimant is able to walk and stand for six hours per eight-hour workday as well as sit for six hours per eight-hour workday with normally scheduled breaks.  Further, the claimant is able to occasionally climb ramps and stairs, but can never climb ladders, ropes and scaffolds.  The claimant is also able to occasionally balance, stoop, crouch, kneel and crawl.  Finally, the claimant is also able to frequently handle and finger.  Moreover, the claimant must avoid exposure to extreme cold or heat; and must avoid exposure to unprotected heights and dangerous moving machinery.  The claimant is also able to understand, remember and carry out simple instructions and make commensurate work related decisions in a work setting with few changes.  The claimant is able to interact occasionally with supervisors, co-workers and the public.  The claimant is able to maintain concentration, persistence and pace for two hours at a time during the workday with normally scheduled breaks.

AR 21.

At step four, the ALJ concluded that through the date last insured, Ms. Almanza was unable to perform any of her past relevant work.  AR 27.  At step five, the ALJ found that Ms. Almanza was able to perform work that existed in significant numbers in the national economy, including as a cleaner in a motel or hotel setting, a merchandise maker, and a collator operator. AR 28.  The ALJ thus found Ms. Almanza not disabled at step five.  AR 28–29.

Ms. Almanza requested that the Appeals Council review the ALJ's unfavorable decision. AR 293–94.  On October 8, 2020, the Appeals Council denied the request for review.  AR 1–6. Ms. Almanza timely filed her appeal to this Court on December 4, 2020.  Doc. 1.[7]

## I.     Ms. Almanza's Claims

Ms. Almanza raises two main arguments for reversing and remanding this case.  First, she contends that the ALJ failed to properly evaluate the medical opinion of consultative examiner Dr. Em Ward.  Doc. 23 at 6–9.  Second, she contends that the ALJ erred by failing to properly evaluate the impact of her severe mental impairments in the RFC.  *Id*. at 9–11.  I find

---

[7] A claimant has 60 days to file an appeal.  The 60 days begins running five days after the decision is mailed.  20 C.F.R. § 404.981; *see also* AR 2.

that the ALJ properly found Dr. Ward's opinion unpersuasive.  Further, the ALJ accounted for

Ms. Almanza's mental impairments in the RFC.  I therefore affirm the ALJ's decision.

## II.     Analysis

### A.  The ALJ did not err in finding Dr. Em Ward's opinion unpersuasive.

Ms. Almanza contends that the ALJ failed to properly evaluate the medical opinion of the

state consultative examiner, Dr. Em Ward.  Doc. 23 at 6–7.  She argues that the ALJ's reasons

for rejecting Dr. Ward's opinion "are not supported by substantial evidence and are errors of

law."  *Id*. at 9.  The Commissioner argues that the ALJ reasonably found Dr. Ward's opinion

unpersuasive.[8]  Doc. 26 at 7.  I agree with the Commissioner.

Ms. Almanza filed her application for DIB on December 21, 2017.  AR 249–50.  For

claims filed on or after March 27, 2017, all medical sources can provide evidence that is

categorized and considered as medical opinion evidence and subject to the same standard of

review.  20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior

administrative medical findings for claims filed on or after March 27, 2017.").  An ALJ has the

---

[8] The Commissioner additionally argues that none of Dr. Ward's statements qualify as "opinions" under the new regulations and do not require an assessment as "opinion evidence." Doc. 26 at 7–9.  While this may be true, the ALJ did not reject Dr. Ward's opinion because Dr. Ward's statements do not qualify as opinion evidence.  Consequently, this reason, offered by the Commissioner, is a post hoc rationalization not articulated in the ALJ's decision and is not accepted by the Court.  *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962) ("The courts may not accept appellate counsel's post hoc rationalizations for agency action.  [*Securities & Exchange Comm'n v. Chenery Corp*., 332 U.S. 194 (1947)] requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself:  '(A) simple but fundamental rule of administrative law * * * is * * * that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action * * *.'  Ibid.  For the courts to substitute their or counsel's discretion for that of the Commission is incompatible with the orderly functioning of the process of judicial review.").

obligation to "review all of the evidence relevant to [a] claim," including medical source

opinions.  20 C.F.R. § 404.1520b.  "An ALJ is required to articulate how persuasive [he or she]

finds all of the medical opinions and prior administrative medical findings in a given case."

*Olivares v. Kijakazi*, 2022 WL 1486019, at *5 (D.N.M. May 11, 2022) (unpublished) (citing 20

C.F.R. § 404.1520c(b)).  The regulations set forth five factors the SSA will consider in

evaluating medical opinions:

> (1) Supportability.  The more relevant the objective medical evidence and
> supporting explanations presented by a medical source are to support his or her
> medical opinion(s) or prior administrative medical finding(s), the more persuasive
> the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency.  The more consistent a medical opinion(s) or prior administrative
> medical finding(s) is with the evidence from other medical sources and
> nonmedical sources in the claim, the more persuasive the medical opinion(s) or
> prior administrative medical finding(s) will be.
>
> (3) Relationship with the claimant.  This factor combines consideration of the
> issues in paragraphs (c)(3)(i) through (v) of this section.
>
>> (i) Length of the treatment relationship.  The length of time a medical source
>> has treated you may help demonstrate whether the medical source has a
>> longitudinal understanding of your impairment(s).
>>
>> (ii) Frequency of examinations.  The frequency of your visits with the medical
>> source may help demonstrate whether the medical source has a longitudinal
>> understanding of your impairment(s).
>>
>> (iii) Purpose of the treatment relationship.  The purpose for treatment you
>> received from the medical source may help demonstrate the level of
>> knowledge the medical source has of your impairment(s).
>>
>> (iv) Extent of the treatment relationship.  The kinds and extent of
>> examinations and testing the medical source has performed or ordered from
>> specialists or independent laboratories may help demonstrate the level of
>> knowledge the medical source has of your impairment(s).
>>
>> (v) Examining relationship.  A medical source may have a better
>> understanding of your impairment(s) if he or she examines you than if the
>> medical source only reviews evidence in your folder.

(4) Specialization.  The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

(5) Other factors.  We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding.  This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.  When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

20 C.F.R. § 404.1520c(c).

SSA regulations impose three "articulation requirements" when an ALJ considers medical opinion evidence.  *See* 20 C.F.R. § 404.1520c(b).  First, "when a medical source provides multiple medical opinion(s)," the ALJ need not articulate how he or she considered each individual medical opinion; rather, the ALJ "will articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis."  20 C.F.R. § 404.1520c(b)(1).  Second, while an ALJ must consider five factors when evaluating medical opinion evidence, *see* 20 C.F.R. § 404.1520c(c)(1)–(5), the ALJ is generally only required to articulate his or her consideration of two of those factors:  "[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision."  20 C.F.R. § 404.1520c(b)(2).  Finally, if differing medical opinions are equally well-supported and consistent with the record, the ALJ must then "articulate how [he or she] considered the other most persuasive factors . . . for those medical opinions."  20 C.F.R. § 404.1520c(b)(3).

Ultimately, the relevant question is whether the SSA's decision complies with the regulations and is supported by substantial evidence. *See Zhu v. Commissioner, SSA*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (unpublished) ("The ALJ complied with this regulatory framework and his evaluations of the pertinent medical opinions are supported by substantial evidence."). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Finally, the decision below must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen*, 436 F.3d at 1165 (internal quotation marks omitted).

Here, the ALJ explained how he considered the supportability and consistency factors for Dr. Ward's medical opinion. Dr. Ward opined that "[p]hysically, Ms. Almanza may be capable of part-time sedentary-to-light duty. This may be limited, however to a few hours per day." AR 365. The ALJ found Dr. Ward's opinion to be unpersuasive. AR 26. The ALJ explained that "Dr. Ward's opinion is not consistent with and supported by the evidence of record and her own findings." *Id*. The ALJ explained that Dr. Ward observed that Ms. Almanza's "tandem, toe, and heel walks were intact," and that she was "able to balance on each foot, squat, touch the floor, and get out of a chair and onto the table." AR 25–26. The ALJ also noted that the record established that Ms. Almanza has full bilateral grip strength in both hands. AR 26. The ALJ further noted that both Dr. Reid and Dr. Brady found that Ms. Almanza could perform at a light exertional level. AR 25–26. The ALJ determined that the evidence showed that Ms. Almanza

"can perform at a higher level than sedentary" because she could "move without difficulty." *Id.*
The ALJ's discussion of how he considered the supportability and consistency factors for Dr.
Ward's opinion provides the Court with a sufficient basis to determine that appropriate legal
principles have been followed.

The ALJ's analysis of Dr. Ward's opinion also is supported by substantial evidence.  Dr
Ward's opinion addressed Ms. Almanza's ability to do physical activity, specifically sedentary-
to-light duty work.  Sedentary work and light work both involve certain physical activities.

> Sedentary work involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files, ledgers, and small tools.
> Although a sedentary job is defined as one which involves sitting, a certain
> amount of walking and standing is often necessary in carrying out job duties.
> Jobs are sedentary if walking and standing are required occasionally and other
> sedentary criteria are met.

20 C.F.R. § 404.1567(a).

> Light work involves lifting no more than 20 pounds at a time with frequent lifting
> or carrying of objects weighing up to 10 pounds.  Even though the weight lifted
> may be very little, a job is in this category when it requires a good deal of walking
> or standing, or when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls.  To be considered capable of performing a full or
> wide range of light work, you must have the ability to do substantially all of these
> activities.  If someone can do light work, we determine that he or she can also do
> sedentary work, unless there are additional limiting factors such as loss of fine
> dexterity or inability to sit for long periods of time.

*Id*. at § 404.1567(b).

The ALJ described Dr. Ward's examination, which revealed that Ms. Almanza had "a
normal gait and station," there was no swelling or clubbing in her hands, and she had "full grip
strength bilaterally as well full arm and forearm strength."  AR 23.  "Dr. Ward also noted that the
claimant was able to write her name with her right hand without difficulty, [and] her tandem, toe,
and heel walks were intact."  *Id*.  The ALJ explained that "Dr. Ward noted that the claimant was
able to balance on each foot, squat, touch the floor, and get out of a chair and onto the table."  *Id*.

Both state agency doctors found that Ms. Almanza could perform at a light exertional level.  AR 25–26.  The ALJ adequately discussed the evidence that supported his evaluation of Dr. Ward's opinion.  AR 26–27.

Ms. Almanza argues that the evidence that the ALJ relied on did not constitute substantial evidence and was not legally correct because the ALJ relied on medical findings unrelated to Ms. Almanza's medically determinable impairments.  Doc. 23 at 7.  According to Ms. Almanza, the ALJ ignored the primary symptoms stemming from her lupus, including her reports of rashes, sores, and daily aches all over her body.  *Id*.  She reported getting dizzy when she walked more than an hour, dropping things when her hands give out, swell, and are stiff.  *Id*.  Ms. Almanza reported excessive tiredness, joint pain, trouble remembering, feelings of depression, and heat and cold intolerance.  *Id*.  Ms. Almanza contends that the ALJ's decision is not based on substantial evidence because "instead of looking at the signs and symptoms related to Ms. Almanza's autoimmune disease, affecting her tissues, he inexplicably focused on her ability to move about the room during the brief encounter."  *Id*. at 8.  The evidence submitted by Ms. Almanza, however, does not "overwhelm" the evidence found by the ALJ that Ms. Almanza was able to move about without difficulty and had normal grip and arm strength.  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *accord Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de

novo.").  The ALJ's determination that Dr. Ward's opinion is not persuasive is supported by

substantial evidence.

B.   **The ALJ did not fail to properly incorporate moderate limitations found at step three into the RFC.**

Ms. Almanza criticizes the ALJ for finding a moderate limitation in her concentration,

persistence, and pace at step three and then failing to account for that moderate limitation when

assessing her RFC.  Doc. 23 at 9–11.  Specifically, she argues that "the RFC made no connection

to the moderate limitations in concentration, persistence or pace, stating that Ms. Almanza could

'maintain attention, persistence[,] and pace for two hours at a time during the workday with

normally scheduled breaks.'"  *Id*. at 9.  The Commissioner contends that the ALJ reasonably

accounted for the moderate limitations found at step three in the RFC assessment.  Doc. 26 at

12–18.  I agree with the Commissioner.

At step three, an ALJ "must evaluate the effect of a claimant's mental impairments on her

ability to work using a 'special technique' prescribed by the Commissioner's regulations."  *Wells*

*v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013); 20 C.F.R. § 404.1520a(a) (effective March 17,

2017).  In applying this "special technique," the ALJ rates the degree of the functional limitation

resulting from the claimant's medically determinable mental impairments in four broad

functional areas, often referred to as the "paragraph B" criteria:  understand, remember, or apply

information; interact with others; concentrate, persist, or maintain pace; and adapt or manage

oneself.  *Id*. at § 404.1520a(b), (c)(3).  The ALJ will rate the degree of limitation using a five-

point scale:  none, mild, moderate, marked, and extreme.  *Id*. at § 404.1520a(c)(4).  Here, the

ALJ found that Ms. Almanza had moderate limitations in understanding, remembering, or

applying information; in interacting with others; in concentrating persisting or maintaining pace;

and in adapting or managing oneself.  AR 19–20.  Ms. Almanza complains that "the ALJ did not

explain how the moderate limitation in maintaining concentration, persistence or pace is accounted for in the RFC," and that the ALJ did not include any limitation that accounted for this moderate limitation in the RFC.  Doc. 23 at 10.

Consistent with SSR 96-8p, the Tenth Circuit has repeatedly held that an ALJ is not bound by his step-three findings when fashioning a claimant's RFC.  "The adjudicator must remember that the limitations identified in the 'paragraph B' . . .  criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  SSR 96-8p, 1996 WL 374184, at *4; *see also Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) (quoting SSR 96-8p);  *DeFalco-Miller v. Colvin*, 520 F. App'x 741, 748 & n.5 (10th Cir. 2013) (unpublished);  *Beasley v. Colvin*, 520 F. App'x 748, 754 & n.3 (10th Cir. 2013) (unpublished) ("The ALJ was under no obligation to include limitations in social functioning in Ms. Beasley's RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis."); *Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) (unpublished) ("[W]e conclude that the ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case.").

The ALJ is required to assess a claimant's RFC based on all of the relevant evidence, including medical evidence (physical and mental).  20 C.F.R. § 1545.  The impairments, including mental impairments, which an ALJ identifies at steps two and three are distinct from the functional limitations which must be identified and described in an RFC.  The RFC finding requires a "more detailed assessment."  SSR 96-8p, 1996 WL 374184, at *4; *see also Wells*, 727 F.3d at 1065.  The RFC must account for "all of [the claimant's] medically determinable

impairments . . . including [the claimant's] impairments that are not 'severe.'"  20 C.F.R.

§ 404.1545(a)(1)–(2).  In addition, the "RFC assessment must include a narrative discussion

describing how the evidence supports each conclusion, citing specific medical facts [ ] and

nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting Social Security Ruling 96-8p) (internal

quotation marks omitted).  Thus, the ALJ's finding that Ms. Almanza had a moderate limitation

in the paragraph B criterion of concentration, persistence, or pace, did not mandate any specific

findings within the RFC assessment.  Nevertheless, in this case, the ALJ accounted for Ms.

Almanza's moderate limitation.

The ALJ explained how the moderate limitation in maintaining concentration,

persistence, and pace was accounted for in the RFC.  The ALJ explained that  "[David LaCourt,

Ph.D.] found that the claimant had a moderate limitation in sustaining concentration and task

persistence as well as for carrying out instructions.  As for attending and concentrating, Dr.

LaCourt found no to mild limitations."  AR 25.  The ALJ found Dr. LaCourt's opinion

persuasive because it was "consistent with and supported by the evidence of record and his own

findings during the examination." *Id*.  Ms. Almanza does not take issue with the ALJ's

assessment of Dr. LaCourt's opinion.  The ALJ further explained that "the limitation that the

claimant is able to maintain concentration, persistence and pace for two hours at a time during

the workday with normally scheduled breaks is supported by her attention being within the

normal range."  AR 27.  Ms. Almanza does not challenge this finding by the ALJ.

The ALJ adequately explained why he limited Ms. Almanza to concentration,

persistence, and pace to two-hour increments, and that finding is consistent with her ability to

perform work activities as assessed in her RFC.  Thus, the ALJ accounted for his step three

finding in his RFC by limiting Ms. Almanza to maintaining concentration, persistence, and pace

for two hours at a time.

Finally, Ms. Almanza criticizes the ALJ for accounting for his step-three finding that she had a moderate limitation in the ability to understand, remember, and apply information by limiting her to work with "simple instructions."  Doc. 23 at 10–11.  She argues that "a limitation to simple work is insufficient to account for a claimant's mental impairments."  *Id*. at 11 (citing *Jaramillo v. Colvin* 576 F. App'x 870 (10th Cir. 2014) (unpublished).  In *Jaramillo*, the ALJ limited the claimant to performing "simple, routine, repetitive, and unskilled tasks."  567 F. App'x at 874.  In this case, the ALJ did not limit Ms. Almanza to any particular skill level. Instead, the RFC states that Ms. Almanza is able to "understand, remember and carry out simple instructions and make commensurate work[-]related decisions in a work setting with few changes," AR 21, which are basic work activities necessary to do most jobs, 20 C.F.R. § 404.1522(b).  The ALJ did not use the shorthand phrases "simple work" or "unskilled tasks" in the RFC to describe her mental limitations, and *Jaramillo* therefore does not apply.  Rather, the ALJ properly defined Ms. Almanza's ability to perform basic work activities in accordance with the regulations.

**III.    Conclusion**

For the reasons stated above, I find that the ALJ applied the correct legal standards, and his decision is supported by substantial evidence.

IT IS THEREFORE ORDERED that Crystal Juliet Almanza's Motion to Reverse and Remand with Supporting Memorandum (Doc. 23) is DENIED, and the Commissioner's decision is AFFIRMED.

Laura Fashing
United States Magistrate Judge
Presiding by Consent

15